We'll move on to our sixth case this morning, which is Prater v. Saul. Good morning. Let's just wait one moment until we finish the changeover at the council table. All right. You may proceed. Good morning, Your Honor. My name is Randall Forbes. I represent the Disability Claimant. I have represented the claimant at the district court level and now at this level, but not        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.       Thank you. Thank you. Thank you. Thank you. Thank you. This case is a difficult case and depends upon interpreting meaning in a sentence, but one of the reasons I brought it to you is to give the Social Security Administration some clarity so that I don't have to keep bringing these cases to you. The RFC has the word while in it. If while means at the same time, then the RFC is a logical contradiction. If while means although, then it appears to negate, the second part of the limitation appears to negate the first part. So in interpreting this limitation, the meaning of the word while will be important. In essence, I read the case law that says either you have a designated frequency of position change or the claimant can change positions at will. In one sense, the present state of the law is an artificial construct because sciatica, back pain, even knee pain doesn't always go according to a schedule and yet it appears to be a schedule that the designated frequency is following. The word as needed in the limitation is an indication that it is at will. But in essence, this really isn't a claimant directed position change, this is an employer directed position change at 30 minutes. Also a hypothetical, the RFC has to be backed up by a hypothetical. The hypotheticals here do not match. There is an argument that the hypothetical as is actually tougher than the RFC that was written, but the fact that they don't match is an indication that the RFC was not well thought out. Did you object or did counsel object to the hypothetical at the hearing? Normally hypotheticals, they did not, and normally hypotheticals like this are not objected to. However, if the judge had stopped at this point, what I would have done is I would have asked the question, well how many position changes are too much? Did counsel ask any questions of the vocational expert at the hearing? He did not, and that I can recall, but I'm getting to the point that the judge asked the question that counsel would have asked. How many position changes is too much or were preclusive? And that was the vocational expert answered every 20 minutes with a two minute adjustment in between. So, the other thing about the claimant's attorney asking hypotheticals is if a hypothetical is perceived to be defective by the plaintiff's attorney, then the plaintiff's attorney is faced with the choice, do I ask more questions to make it better against me, or since it's their burden at step five, do I let them, do I let the commissioner, do I let the commissioner fail at step five, which is a perfectly legitimate strategy since the commissioner has the burden at step five. Well, you haven't challenged the factual premise that's embedded in the RFC here, the factual finding of the ALJ that your client could either sit or stand for 30 minutes at a time. There's no challenge to that as a factual, to the medical support for that? Other than to say that if you find it defective, that it's not harmless error because there is evidence that what she could do is 20 minutes at a time. Well, that's what she said, but the ALJ rejected that and said no, the medical evidence supports her ability to sit or stand for 30 minutes at a time. There's no challenge to that, so the factual premise of the RFC is not challenged here, so it's strictly a, what, a vagueness challenge as I understand it. It's a, I don't know if I completely agree with you on that, Your Honor. I'm not. Well, how would you characterize it? Yeah. The ALJ has a duty to give a clear and specific RFC by regulation and probably by just basic administrative law principles so that it's not arbitrary and pericious. The ALJ has a duty and if it doesn't uphold that duty, then the analysis is, is it harmless error? And we would say no because the alternative hypothetical and evidence is 20 minutes and when paired with the vocational experts saying 20 minute position changes are work for clues. But you just said you're not challenging the factual finding that she could sit or stand for 30 minutes at a time, so if your challenge is that, maybe I'm misunderstanding your challenge, but. I'm, I'm not, my, quite frankly, I didn't think about that, Your Honor, but I don't think that there's substantial evidence as a whole to support the RFC, mainly because the hypothetical doesn't match the RFC. That's the first part. And, and then once, once the RFC does not stand on its own, then if there is no alternative RFC, then it needs to be remanded so that the evidence can be reevaluated and a new RFC, new RFC put into place. Thank you. I'll reserve the rest of my time. Thank you. Yeah. Mr. Hensley. Good morning. May it please the Court, I'm Jay Hensley and I represent the Commissioner of Social Security. Your Honors, as you've identified, the issue in this case is a very narrow legal one based on vagueness. And it's, it's an issue that Ms. Prater certainly could have raised at the hearing, but declined to do so. Contrary to Ms. Prater's argument, the ALJ's sit-stand option was not vague and no one at the hearing seemed the least bit confused by it. The ALJ was unambiguous in asking Mr. McVie, the vocational expert, to assume a hypothetical that allows an individual to change positions in the course of the day, but would need to remain either sitting or standing at least 30 minutes at a time. Mr. McVie understood that this meant the individual could change positions as much as she needed to do so as long as the position changes did not occur more frequently than every 30 minutes. There are three important points that run contrary to Ms. Prater's argument in this case. First, Mr. McVie expressed no confusion regarding the hypothetical. Number two, as Judge Kaney identified, Ms. Prater's counsel offered no challenges to the hypothetical and, in fact, when invited to do so, asked Mr. McVie no questions. Third, Ms. Prater today fails to argue that the evidence warranted a more restrictive RFC than that which the ALJ ultimately adopted. The specificity, or excuse me, first let's discuss Mr. McVie briefly. The record shows that he earned a Master's in Rehabilitation Counseling in 2004 with a concentration in Functional Job Analysis and Forensic Rehabilitation. He's been a vocational expert since at least 2008, 10 years before the hearing, and before that he was an adjunct professor at Bowling Green where he instructed on foundation of the vocational rehabilitation process. He's a member of several vocational professional organizations. He's published several papers on the vocational rehabilitation profession. Mr. McVie explained that although the Dictionary of Occupational Titles does not address the ability to alternate between sitting and standing, he relied on his experience and education in responding to the hypothetical. Mr. McVie further testified that he relied on his performance of several rehabilitation functional job analyses, his work in job placement and job coaching, and his own observation of how jobs are actually performed. Ms. Prater challenged none of this testimony during the hearing, nor does she do so now. Your Honors, both Kettleboater and Schmidt recognized that an RFC allowing for a claimant to alternate between sitting and standing at the claimant's own option is appropriate. Here this is exactly what the ALJ described in this case. The only difference is that here the ALJ offers more specificity by indicating that Ms. Prater would need to remain either sitting or standing at least 30 minutes at a time. Now, importantly, this does not mean that Ms. Prater must change positions every 30 minutes, only that she would be allowed to do so as she deems necessary within these confines. The specificity the ALJ described distinguishes this case further from the Arnett case in which that ALJ vaguely stated that the claimant would be allowed to alternate sitting and standing. The ALJ's sit-stand option further complies with SSR 96-9P by specifying the frequency of Ms. Prater's need to alternate sitting and standing. Let's now discuss what Ms. Prater's counsel did at the hearing. Importantly, we again note that Ms. Prater was, in fact, represented by an attorney at the hearing who offered no challenge to the ALJ's hypothetical or to Mr. McBee's testimony. Ms. Prater's counsel failed to ask Mr. McBee a single question, yet today, counsel claims that the RFC was impermissibly vague. Finally, as I've noted before, Ms. Prater offers no argument that the evidence warranted a more restrictive RFC. Your Honors, substantial evidence supports the ALJ's decision in this case. The threshold for substantial evidence review is not a high one. It calls for deference to the presiding ALJ who saw the hearing up close. It is not enough that the evidence supports a contrary conclusion. It must actually compel that conclusion. Ms. Prater simply fails to satisfy this standard, and for this reason, we would respectfully ask this Court for an affirmance. I would be more than happy to take questions, otherwise I do appreciate the Court's time. Thank you. Thank you. Mr. Forbes. Thank you, Your Honors. First, from the vantage point of the attorney at the administrative hearing, that attorney doesn't know which hypothetical is the judge's hypothetical. All that attorney knows is that there are several hypotheticals, any one of which could be the judge's hypothetical. So long as one of those hypotheticals fits the claimant's theory of the case, then really that attorney cannot do much better than that. If you do decide to follow a path where the claimant's attorney needs to object to the stand of language, I would ask that you give us guidance, good guidance, because what will happen is there will be a lot of contention at these hearings, probably creating probably five to ten more minutes of hearing time, which is a very valuable resource. I'm kind of arguing their argument right now that I usually hear. And, um, if we are required to object at administrative hearings to the language, it probably will mean that this issue will not come back to this Court much, much more. So, at least from the administrative attorney's standpoint, the judge asked a hypothetical that fit his theory of the case. It was the one that had to do with the position change every 20 minutes. And from the vantage point of the attorney at the administrative hearing, there was evidence to support that hypothetical. And then I would ask you, I can't humanize the claimant much because I don't think I've met her, but this lady was a very hard worker. You look at her work records, she worked, I believe, about 27 years. She weighed 386 pounds, and she had numerous serious medical impairments. So it's not outside the realm of possibility that the 20-minute frequency, work preclusive frequency should apply, and given the evidence and record, it's definitely supported by the change of language. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.